UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

| | |
|---|---|
| MILTON D. PERRY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CASE NO. 5:11-cv-00134-TBR |
| | ) |
| CITY OF OAK GROVE, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

The Plaintiff, Milton D. Perry ("Perry"), submits his Memorandum of Law in Opposition to the Defendant's Motion to Dismiss and, in support thereof, states the following:

**I.   RESPONSE TO DEFENDANT'S "FACTS" AND STATEMENT OF ADDITIONAL FACTS**

The Defendant suggests that Mayor Potter's November 10, 2010 letter merely "anticipated" that *KRS 15.520* was applicable. DN 4-1 at 1. However, Potter's letter plainly states, "because of allegations of misconduct, the provisions of *KRS 15.520 are* applicable." DN 1-1 (emphasis added). In that same letter, Potter also advised Perry that, "you will be allowed to confront those *individuals who have made complaints against you at the hearing*." Id. Potter placed Perry on paid administrative leave, but revoked Perry's "authority to carry a weapon or act as a police officer" and advised Perry "not to use your badge in any manner." Id. Potter also ordered Perry to "turn over control and possession of all City property to interim Chief Les Langdon immediately." Id. Finally, Potter advised Perry, "your duties as Wildlife Officer for the City of Oak Grove are suspended until further notice." Id.

1

The Defendant suggests Mayor Potter also "anticipated no further criminal charges." DN 4-1 at 1-2. Mayor Potter's letter states "*there will be no* criminal charges against you. Accordingly, *it is my pleasure* to reinstate you as Chief of Police, effective immediately." DN 1-1 (emphasis added).

The Defendant also fails to mention that on March 28, 2011, Perry was "terminated, effective immediately." DN 1-3. And, the Defendant fails to mention that, although Potter's March 28, 2011 letter does not explicitly mention *KRS 15.520,* the letter appears to track many of the due process rights afforded therein. Compare DN 1-3 to *KRS 15.520*. Just as Perry was informed of "complaints" by the November 10 letter, he was informed by the March 28 letter that "you will be allowed to confront *those individuals who have made complaints against you at the hearing.*" DN 1-3 (emphasis added). Finally, to make a bad situation worse, Oak Grove issued a news release leading to a story in the local paper two days later titled, "Potter fires police chief." DN 1 ¶ 19.

## II. STANDARD OF REVIEW

Perry generally agrees with Defendant's recital of the standard of review. However, it is important to note that "[w]hen a court is presented with a *Rule 12(b)(6)* motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)). Moreover, "[t]he Sixth Circuit has consistently held that '[t]o survive a motion to dismiss under *[Rule] 12(b)(6)*, a "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory."'" *Key v. City of*

*Princeton*, 2010 U.S. Dist. LEXIS 95957 (W.D. Ky September 13, 2010) (quoting *Glassner v. R.J. Reynolds Tobacco Co.*, 223 F.3d 343, 346 (6th Cir. 2000) [quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (internal quotations and citation omitted)]). Accordingly, Perry's reference to the letters attached to his Complaint and the statements contained in Potter's letter—such as the fact that Potter informed Perry that "individuals" had "made complaints against" Perry—cannot be ignored for purposes of the Defendant's Motion.

### III.  ARGUMENT

**A.  Even under the Defendant's view of *KRS 15.520*, Perry has stated a claim for a legal remedy.**

Defendant admits that *KRS 15.520* is triggered if an adverse employment action against an officer is premised upon a citizen's complaint. See DN 4-1 at 3 ("*KRS 15.520* is triggered only when 'citizens' make 'complaints' against police officers"), at 5 ("an underlying citizen's complaint is required before *KRS 15.520* is triggered"), and at 6 ("an underlying citizen's complaint is required to trigger *KRS 15.520*"). Regardless of whether the Defendant's view of *KRS 15.520* is accurate (which Perry respectfully submits it is not), because Potter's termination of Perry was predicated not just upon <u>a</u> complaint, but complaint<u>s</u>, the Defendant must likewise concede *KRS 15.520* was triggered and Perry was to be afforded the rights thereunder. As this Court succinctly noted in *Laux v. City of Oak Grove*:

> The due process rights to be afforded to Mr. Laux are clearly set forth in *Ky. Rev. Stat. Ann. § 15.520*. When the City of Oak Grove receives a *complaint* about one of its officers, the City *must serve the charges on the police officer in writing*. *Ky. Rev. Stat. Ann. § 15.520 (1)(a) & (e)*. "Prior to or within twenty-four (24) hours after suspending the officer pending investigation or disposition of a *complaint*, the officer *shall be advised of the reasons* for the suspension." *Ky. Rev. Stat. Ann. § 15.520 (1)(b)*.

2004 U.S. Dist. LEXIS 27768 * 4-5 (emphasis added).[1]

The plain language provisions cited by this Court in *Laux* as affording police officers due process have not changed since *Laux*. Accordingly, Perry stated a claim for relief under *42 U.S.C. § 1983* and *KRS 15.520* when he alleged that the Defendant failed to provide him with the due process right of *inter alia* advising him of "the particulars of any purported allegations against Perry that were the subject of" the letters, "let alone do so in a manner that informed Perry of the nature and circumstances of Perry's alleged misconduct." See DN 1 at ¶¶ 13 and 17.

This Court noted in *Laux* that if *KRS 15.520* governed Laux's claim, then he had a property interest in his employment and the Court must then determine if he was deprived of due process by the City of Oak Grove:

> If a person has a property right in his or her employment, "the State could not deprive [him] of this property without due process." *Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538, 84 L. Ed. 2d 494, 105 S. Ct. 1487 (1985)*. "Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. . . .'" *Id.* Both parties agree that *Kentucky Revised Statutes Annotated § 15.520* governs the disposition of this action. Therefore, this Court must determine if Mr. Laux was deprived of his due process rights required under *Ky. Rev. Stat. Ann. § 15.520* and the interpretations of that statute in the Kentucky common law.

2004 U.S. Dist. LEXIS 27768 at *4.

Perry's allegations go even further than those of a police officer who claimed a similar violation of *KRS 15.520* and whose complaint survived a *Rule 12(b)(6)* challenge in this Court. In *Key v. City of Princeton*, Key alleged that when he returned from military service overseas he was reemployed by the Princeton Police Department, but was then terminated on his first day of reemployment, allegedly for insubordination. 2010 U.S. Dist. LEXIS 95957 at *2.[2] Similar to

---

[1] For the Court's convenience, a copy of *Laux*, which was not attached to Defendant's Motion as Exhibit C as stated by Defendant, is attached hereto as Exhibit A.
[2] For the Court's convenience, copy of *Key v. City of Princeton* is attached hereto as Exhibit B.

Perry's allegations, Key alleged that "the department did not provide him with an explanation for the investigation *nor the basis of the charges for which he was under scrutiny*." *Id.* (emphasis added). And, unlike Perry who was told that "individuals" had "made complaints against you," Key alleged that "*he does not know* if there was a formal complaint lodged against him by a private citizen upon which the investigation and his ultimate dismissal were predicated." *Id.*

Officer Key alleged the City of Princeton violated *KRS 15.520* in that "(1) if his termination was predicated upon a complaint about his conduct, then the department should have sought an affidavit from the complainant (2) he should have been afforded formal, written charges of the rule or regulation he allegedly violated and (3) he was entitled to a public, pre-termination hearing." *Id.* at *9-10. Like Defendant in this case, the City of Princeton argued to this Court that "the statute does not provide due process rights for law enforcement officers where no complaint about the police officer's conduct is filed with the police department." *Id.* at *10 and *10 n.4. This Court found that "*[i]f* a complaint levied against Key did indeed result in his dismissal, *KRS 15.520* may entitle Key to some redress if the PPD did not follow the procedures set forth in the statute." *Id.* at *11 (emphasis added). And, although this Court concluded that "Key's pleading falls short of specifically asserting that a complaint was filed with the PPD regarding his performance as a police officer, the pleading, contains the required inferential allegations to survive this motion to dismiss." *Id.* at *11-12.

If the plain language used by Mayor Potter in his letters is to be believed—which it must be for purposes of the Defendant's Motion—Potter had received "complaints" about Perry from individuals. Potter does not suggest to Perry that Perry was being terminated as a result of an internal investigation or that Perry had done something that had caused the "pleasure" with which Potter reinstated Perry in January of 2010 to turn into such dissatisfaction some 50 days

5

later that Potter took it upon himself to fire Perry without any cause at all. In fact, Potter does not suggest any personal displeasure with Perry—who had served Oak Grove for 23 years as a police officer—in his letters. Any reasonable reading of Potter's letters suggests Potter was taking both actions as a result of complaints made by "individuals," which complaints were never reduced to written charges against Perry before the adverse actions were taken. Thus, Potter shortcut the due process rights afforded by *KRS 15.520* and first summarily relieved and later summarily fired Perry from his position without specifically "charging" him with the complaints he had taken about Perry. Perry's Complaint states a valid legal claim for relief.

> **B.     The Kentucky Supreme Court has addressed the precise issue before this Court and found KRS 15.520 to apply; and, the unpublished decisions cited by the Defendant are easily distinguished and support Perry's allegation that his due process rights were violated.**

The Supreme Court of Kentucky provided all the analysis this Court needs to find that Perry has stated a claim under *KRS 15.520* in *City of Munfordville v. Sheldon*, 977 S.W.2d 497 (Ky. 1998). As Justice Stumbo introduced the Court's Opinion, "This case deals with the effect *KRS 15.520* on a mayor's ability to fire at will a police chief." *Id.* In *Sheldon*, the mayor summarily fired the police chief, the day after having been elected mayor "giving no reasons for the dismissal." *Id.* The mayor had a complaint in his possession at the time he fired the chief. *Id.*

The Supreme Court adopted the Court of Appeals' reasoning that "[w]hile it may be absurd to require the mayor to afford due process rights to someone he or she has already decided to fire, the procedures of *KRS 15.520* at least give officers the opportunity to be heard in a public forum and the opportunity to defend and protect their professional and personal reputations from permanent damage." *Id.* at 499. The Court specifically noted that "our holding forbids a mayor or other local executive authority from receiving a citizen's complaint against a

6

police officer, then firing the officer based on that complaint, without ever affording the officer a right to publicly defend against the complaint as required by *KRS 15.520*." Importantly, the Court also rejected the mayor's argument that "he never technically *charged*" the chief "with the misconduct as set forth in the complaint." *Id*. at 499 n.1 (original's emphasis). The Court "believe[d] it is sufficient that the mayor did *in fact* predicate the dismissal on the citizen complaint, and, thus we see no reason to reach the issue further." *Id*. (original's emphasis).[3] Thus, a mayor cannot take a complaint from a citizen (or from "any individual" as *KRS 15.520* states) and preempt *KRS 15.520* by firing an officer before providing him with the reasons for his firing.

In spite of the fact that *Sheldon* remains good law in the Commonwealth of Kentucky, Defendant suggests Potter's November 10, 2010 letter "overlooked" two unpublished decisions of the Court of Appeals that have "required a citizen's complaint to trigger KRS 15.520." DN 4-1 at 6 n.1. Even *assuming arguendo* that Potter "overlooked" these decisions, the decisions do nothing to change the fact that Potter predicated the hearing he was offering[4] upon "complaints by individuals" and in those letters tracked some of the rights afforded by *KRS 15.520*, while dodging other rights mandated by the statute. Defendant does not suggest that Potter premised his letters upon "complaints" that did not actually exist in order to satisfy public opinion—if the public was indeed upset by his decision—that he had reasons to fire Perry. Therefore, the Court

---

[3] In contrast to the letters from Potter in the present case specifically mentioning "complaints," stating *KRS 15.520* applied in one and tracking the language of *KRS 15.520* in the other, in *Sheldon* the mayor's letter to the chief informed him, "It is in the best interest of the city government to have a Mayor and Police Chief who can work together effectively. That is not the case here and I have released you from your employment." *Id.* at 500.

[4] Despite this Court's decision in *Laux, supra,* Defendant has apparently not yet changed its procedure of offering rather than mandating and conducting a hearing within 60 days of charging an officer. In both letters Potter states that Perry "will need to make a written request for such hearing and deliver same to this office via certified mail." See DN 1-1 and DN 1-3. Of course, as Perry alleges in his Complaint, any such hearing would have been "illusory and a charade since—according to the Termination Letter—Perry had already been 'terminated, effective immediately' by Potter." DN 1 ¶ 21. Similarly, in *Laux*, this Court noted that *KRS 15.520* "does not contemplate the officer being terminated until *after* investigation and a hearing on the complaint." *Id.* at *5 (emphasis added) (citing *Sheldon*, 977 S.W.2d at 499 and Office of Attorney General Opinion 83-231).

should find that based upon the Kentucky Supreme Court's precedent in *Sheldon*, Perry has stated a claim for which he is entitled to legal relief.

Even if the unpublished cases cited by Defendant are reviewed and considered, they are inapposite to the facts of this case. In fact, one of them actually supports Perry's position as will be discussed in more detail below.

In the first post-*Laux* decision cited by Defendant, *Marco v. University of Kentucky*, 2006 WL 2520182 (Unpublished opinion Ky. App. September 1, 2006), an officer, Marco, received a three-day suspension and 90-days probation for ignoring the pleas of a hand-cuffed arrestee who was hanging half-in-half-out the back of Marco's police van as Marco drove several arrestees from the scene of a DUI traffic stop to the booking area. First, the Court of Appeals noted that the punishment stemmed from an internal investigation by UKPD, not a "complaint." *Id.* at * 1. Second, the Court of Appeals noted that Marco "readily conceded the basic facts of the case: the door to the police van was not properly secured, the door swung open, and Houk slid part way out the door, thereby endangering her safety." *Id.* at *2. Therefore, "an evidentiary hearing would have served no purpose. The essential facts are uncontested." *Id.* Finally, "even if the Bill of Rights could be construed to apply" the Court of Appeals could "discern no prejudice as minimal disciplinary penalties were imposed in relation to the breach of policy." *Id.*

In the second post-*Laux* unpublished decision cited by Defendant, *Ratliff v. Campbell County*, 2010 WL 1815391 (Unpublished opinion  Ky. App. May 7, 2010), the chief of police terminated a sergeant, Ratliff, who had been suspended with pay pending an investigation and— during the pendency of the investigation—came clean by voluntarily emailing the chief admitting to "recent actions" and "poor decisions." *Id.* at *1. Eight days later, after Ratliff had admitted to receiving free drinks at two local bars and revealing the identity of a confidential

informant, the chief terminated him and provided him with a letter that "listed twelve violations" of the "police department's policies, procedures and code of conduct." *Id.*

Because the applicable procedures fell under KRS 78.455, Ratliff appealed his termination to the merit board, after which time he was provided with voluminous and specific information relating to the twelve violations as alleged by the chief in his letter, a full day hearing was held which continued into the next morning, and the board affirmed Ratliff's termination. *Id.* Ratliff then appealed the merit board's decision to the circuit court which granted his motion to exclude various pieces of evidence and remanded the matter to the merit board which again decided Ratliff's termination was appropriate. *Id.* at *2.

In addressing Ratliff's claim that *KRS 15.520* was violated, the Court of Appeals reasoned, "[t]his action, clearly, stems from a termination by a police chief that was upheld by a merit board. Therefore, the appropriate procedure is found in KRS 78.455." *Id.* at *5. Similar to *Marco*, *supra*, the Court of Appeals then found that Ratliff's termination was based on an "internal departmental investigation, rather than an investigation initiated as a result of a citizen complaint." *Id.*

The Court of Appeals even concluded that Ratliff "was afforded due process." *Id.* at *6. In so finding, the Court noted that Ratliff "was given a *detailed notice of the charges* against him *prior to* his suspension." *Id.* at *6 (emphasis added).

The most significant aspect of *Ratliff*, however, is that in rejecting the sergeant's argument that *KRS 15.520* applies, *Ratliff* distinguished the precedent relied upon by Ratliff, *Howard v. City of Independence*, 199 S.W.3d 741 (Ky.App. 2005) for the reason that *Howard* "involved *a mayor and a police officer* and was *not* based on *a firing by the police chief*.

9

Therefore, *in that situation*, KRS 78.455 was inapposite, and KRS 15.520 applied." *Id.* (emphasis added).

Based upon the foregoing analysis, there are at least three ways to distinguish the cases cited by Defendant from former-Chief Milton Perry's case against Oak Grove.  First, there was no internal investigation by the Oak Grove Police Department of Perry, unlike those involved in the cases cited by Defendant, as Perry was then the Chief of the Oak Grove Police Department.  Second, the "cause" for the adverse action taken against the plaintiffs in those cases was well-known to the plaintiffs, whereas Perry was never specifically informed of the nature and circumstances of the complaints against him.  Third, Potter's actions were—by his own admission—predicated upon "complaints" by more than one individual.  Not only does KRS 15.520 apply, but it has been facially violated as alleged by Perry.  Perry's Complaint states a claim for legal relief.

        **C.**      **The Defendant's arguments and the unpublished cases cited by Defendant ignore the plain language and intent of *KRS 15.520*.**

Perry respectfully submits that Defendant's arguments and the unpublished cases of *Ratliff* and *Marco* appear to ignore the intent and plain language of *KRS 15.520*.  *Section 1* of the statute expresses two separate and distinct purposes as intended by the General Assembly: "[1] to deal fairly and set administrative due process rights for police officers of the local unit of government and [2] at the same time provid[e] a means for redress by citizens of the Commonwealth for wrongs allegedly done to them by police officers covered by this section." *15.520(1)*.

In *Section (1)(a)* the statute references "[a]ny complaint," not just a complaint by a "citizen."  *Section (1)(a)* also uses the phrase "taken from any individual."  *Section (1)(a)* then identifies the subject of the "alleg[ations]" of the complaint as being "misconduct."  *Sections*

*(1)(a)(1)* and *(1)(a)(2)* then follow, further breaking down what steps must be taken under the various forms of misconduct alleged; whether "criminal activity" on the one hand or an "abuse of authority or a violation of rules and regulations of the department" on the other, or both as contemplated by *section (1)(a)(4)*.

In light of the statute's discussion of what is meant by a "complaint," a fair and plain reading of *Section (1)(a)* is that it serves dual purposes. First, it satisfies the General Assembly's intention of statutorily (and through publication of the statute) advising the citizens of the Commonwealth of the existence of an approved mechanism to complain against police officers. Second, it provides the Commonwealth's officers with the due process right of being dealt with fairly in the event of "*any* complaint" lodged by "*any* individual" which "*alleges* misconduct." The express purpose of the statute to "deal fairly" with police officers cannot be fairly read to suggest that if a citizen of Indiana or Tennessee complains about an officer's behavior during a traffic stop and the officer is fired as a result of that non-Commonwealth-citizen complaint, the officer has no due process rights under the statute. Such a reading would yield an absolutely absurd and unintended result. The statute's explicit mention of "citizens of the Commonwealth," should not then be read to limit an officer's rights when faced with "any complaint taken from any individual" whether filed, unfiled, written or oral.

*KRS 15.520* does not contemplate that the complaint must be made in writing or filed, even though many cases appear to fall back on the legal understanding that a complaint is something that is ordinarily filed with the clerk of the court. Instead, a complaint must simply be "taken." *Id.* at *(1)(a)*. In fact, the statute expressly provides that in the case of a complaint of criminal activity, "the allegations may be investigated *without* a signed, sworn complaint *of the individual*." *Id.* at *(1)(a)(1)* (emphasis added). However, in the case of a complaint alleging

11

"abuse of official authority or a violation of rules and regulations of the department, *an affidavit*, signed and sworn to by the complainant, *shall* be obtained." *Id.* at *(1)(a)(2)* (emphasis added). And, if "the individual [making the complaint], upon request, refuses to make allegations under oath in the form of an affidavit, signed and sworn to, the department *may* investigate the allegations, but *shall* bring *charges* against the officer *only* if the department can *independently substantiate the allegations absent the sworn statement of the complaint.*" *Id*. at *(1)(a)(3)* (emphasis added).

The above-discussed procedure is all pre-charge procedure and spells out the rights of the officers as well as of the complainants in having their complaints investigated whether written or oral as required. But, then, what of the Defendant's suggested reading of the statute that no protections are afforded an officer absent a "citizen complaint"?:

> Mayor Potter's open-ended discretion to discharge Plaintiff—when no citizen's complaint has been made—is wholly consistent with *KRS 15.520*'s plain language, which provides: "Nothing in this section shall preclude a department from investigating and charging an officer both criminally and administratively." *KRS 15.520(1)(a)(4)*.

DN 4-1 at 6.

Perry respectfully submits that in making the above argument, Defendant has overlooked the plain language of Potter's letters and misread *KRS 15.520(1)(a)(4)*. *Section (1)(a)(4)* merely informs a department that it may follow a dual path of charging an officer under "both" the "criminal" section, *(1)(a)(1)*, and the "abuse of official authority or a violation of rules and regulations of the department," i.e. "administrative[]" section, *(1)(a)(2)*, of *KRS 15.520*. In other words, no officer can cry foul in light of *section (1)(a)(4)* that complaints relating to "both" criminal and departmental, or administrative, matters were combined in a single charge. The

Defendant's reading of section *(1)(a)(4)* would allow a mere footnote to swallow the General Assembly's express intention as set forth in the overarching section of the statute, *section (1)*.

*Section (1)(b)* next allows interim measures to be taken against an officer, while providing additional protections to the officer before formal charges are brought. The terminology used in this section shifts and now also refers to the officer as a "suspect," suggesting that the officer is suspected of criminal activity or a violation of departmental matters (or both if proceeding under section (1)(a)(4) as noted above as expressly approved therein). At this point—and no later than 24 hours after suspending the officer—the officer must "be advised in writing of the reasons for the suspension." Looking forward in the statute at *sections (1)(c) and (1)(e)* it becomes apparent that the General Assembly intended to make relatively synonymous the phrase "reasons for the suspension" with "charge" or "charges." *Section (1)(c)* refers to the officer being "made aware of the charges" and *section (1)(e)* refers to "[a]ny charge." A fair reading of these references to "reasons" and "charges" is that the General Assembly simply intended to convey that some form of action must have—by this point—been taken in the form of suspension and the officer now stood "charged" of something rather than merely suspected of something for which he had been given "reasons." It is certainly possible— and likely contemplated by the General Assembly—that one of the initial "reasons" given to an officer for a suspension could be found to be unsubstantiated during the investigation and not become one of the "charges" actually pursued against the officer.

After the officer is provided reasons for his or her suspension as required under *section (1)(b)*, an officer then is provided additional protections under *section (1)(c)* and, if the matter is criminal, additional protections under *section (1)(d)*. Next, under *section (1)(e)*, the basis of a "charge" against an officer "involving violation of any local unit of government rule or

13

regulation *shall be made in writing with sufficient specificity so as to fully inform the police officer of the nature and circumstances of the alleged violation in order that he may be able to properly defend himself. The charge shall be served on the police officer in writing.*" S*ection (1)(f)*—prohibiting public statements by the government concerning the alleged violation until final disposition of the charges—provides officers with the additional protection of not being tried in the court of public opinion prior to any hearing given on the charges. This affords the officer the right of being presumed innocent of the charges until proven guilty.

Additionally, under *section (1)(h)* further due process rights are afforded an officer when a hearing is to be conducted. At a "minimum," seventy-two hours before any hearing, the officer is to be furnished with "[c]opies of any sworn statements or affidavits to be considered by the hearing authority and any exculpatory statements or affidavits," *section (1)(h)(2),* and "[i]f any hearing is *based upon a complaint of an individual*, the individual shall be notified to appear at the time and place of the hearing." *Section (1)(h)(3)*. If an "individual does not appear" "any charge made by that individual *shall not be considered* by the hearing authority and *shall be dismissed with prejudice*." *Section (1)(h)(4)* (emphasis added). Thus, the officer is not only given the right to know the reasons for being suspended, to understand the nature and circumstances of the charge that arises out of the reason for his suspension, to be presumed innocent until proven guilty, and to be provided with the evidence to be used against him and that would even exculpate him, he is also afforded the right to face his accuser. And, if his accuser fails to appear, their charges are to be dismissed with prejudice.

Perry was informed that he would "be allowed to confront those individuals who have made complaints against you at the hearing." Perry was never provided with the who, what, when, where, how and why of the complaints that were made against him. There is no reason

14

why an officer—especially a chief of police—should have any less due process rights to know the nature and circumstances of complaints that caused him to be suspended and terminated whether the complainant is a an officer in training, a seasoned veteran, an Indiana resident, a business owner, or a next door neighbor.  Regardless, Perry was summarily suspended and summarily terminated.  Potter's letters triggered the protections afforded by *KRS 15.520*, which have been blatantly violated.  Perry's Complaint states a valid claim for legal relief.

## IV.   CONCLUSION

The Defendant's Motion overlooks the simple and dispositive fact that Oak Grove Mayor Potter suspended and then terminated the Plaintiff, former-Oak Grove Police Chief Milton Perry, for some reason known to individuals and Potter but undisclosed to Perry.  By Defendant's own admission, Mayor Potter's letter triggered the protections afforded by *KRS 15.520*.

The Defendant's Motion also overlooks this Court's recent decision in *Key v. City of Princeton*, which denied a motion to dismiss a complaint that had alleged only that it was possible that the police officer had been terminated on account of a complaint by some individual alleging the officer had been insubordinate.  In denying the City of Princeton's motion to dismiss, the Court found Key's allegations sufficient to survive the City of Princeton's motion premised upon the same arguments made by the City of Oak Grove in its Motion.

Under the previous Supreme Court of Kentucky precedent of *City of Munfordville v. Sheldon*, Perry must be afforded the protections of *KRS 15.520* as a police chief fired by a mayor for some reason apparent to Potter but undisclosed to Perry premised upon the "complaints" by "individuals."  Defendant cannot in hindsight decide that it wants to change the fact that Potter predicated Perry's termination on some undisclosed reason that was not associated with the Mayor's own dissatisfaction with Perry, but related to these undisclosed complaints.

Finally, a plain reading of *KRS 15.520* supports the existence of a valid due process claim by Perry. The statute's broad language is intended to protect police officers and chiefs from summary suspension and termination premised upon an undisclosed complaint. An employee's right may ordinarily be terminable at will, but in Kentucky the General Assembly has determined that should not be the case for police officers who are fired for some reason. Obviously, by his letters to Perry, Mayor Potter believed he was suspending and firing Perry for some reason. Otherwise he would not have suggested Perry would be "allowed to confront those individuals who have made complaints against you at the hearing." However, without be advised of the names of the individuals or the nature of the complaints made against him, as well as waking up to a newspaper article published in Oak Grove titled, "Potter fire police chief," Perry's due process rights had already been violated and the damage had already been done. Perry is entitled to appropriate relief resulting from Oak Grove's illegal actions.

For all the foregoing reasons, Perry respectfully requests the Court deny the Defendant's Motion.

Respectfully submitted,

By:   */s/ Todd C. Barsumian*
        Todd C. Barsumian

BARSUMIAN LAW
Old Post Office Place
101 NW First Street, Suite 118
PO Box 3555
Evansville, IN 47734-3555
Office: (812) 402-5582
Mobile: (812) 760-9826
Fax: (812) 402-5583
Email: todd@barsumianlaw.com

**CERTIFICATE OF SERVICE**

      I certify that on September 8, 2011, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notification to the following:

Charles D. Cole       ccole@sturgillturner.com

Derrick T. Wright      dwright@sturgillturner.com

                             */s/ Todd C. Barsumian*
                             Todd C. Barsumian