UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:11-CV-00134-R

**MILTON D. PERRY**                                                                                       **PLAINTIFF**

v.

**CITY OF OAK GROVE**                                                                              **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss for Failure to State a Claim (Docket #4). Plaintiff has responded (Docket #5) and Defendant has replied (Docket #6). This matter is now ripe for adjudication. For the following reasons, Defendant's motion is DENIED.

## BACKGROUND

The relevant facts, lifted from the face of Plaintiff's complaint and supporting documentation, are as follows. Plaintiff Milton D. Perry worked as a police officer for 23 years for Oak Grove, Kentucky, the last 18 of which he spent as the chief of police. Sometime before November of 2010, Perry was implicated in a criminal investigation being conducted by the Kentucky State Police. On November 10, the mayor of Oak Grove, Dan Potter, contacted Perry via letter and placed him on paid administrative leave until the conclusion of the investigation ("November Letter").[1] Ex. A, DN 1-1 at 1. The November Letter's second paragraph described

---

[1] Documents that are attached to or incorporated by reference in the complaint may be considered during a motion to dismiss under the Federal Rules of Civil Procedure. *See Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (internal citations omitted); *Whittiker v. Deutsche Bank Nat. Trust Co.*, 605 F. Supp. 2d 914, 924 (N.D. Ohio 2009). The three letters cited within this motion are attached to Perry's complaint and therefore may be relied upon in the instant opinion.

Perry's statutory rights as a police officer in KRS § 15.520:

> This act is being taken because of allegations of misconduct, the provisions of KRS 15.520 are applicable. Thus, should you desire you will be afforded a hearing before me, as the Executive Authority of the city, regarding the allegations being investigated by the Kentucky States Police. Should you desire such a hearing, you will need to make a written request for such hearing and deliver same to this office via certified mail . . . . You will be allowed to present witnesses and other documentary evidence. Finally, you will be allowed to *confront those individuals who have made complaints against you at the hearing*.

Ex. A, DN 1-1 at 1 (emphasis added). According to the complaint, the November Letter was the lone communication and explanation for Perry's administrative leave.

On January 7, 2011, the Christian County grand jury declined to indict Perry. Three days later, Potter informed Perry, again by letter, that he would be reinstated as the chief of police ("January Letter"). Ex. B, DN 1-2 at 2. Perry's reprieve was short lived. On March 28, 2011, Potter sent a third letter to Perry terminating him as the chief of police ("March Letter"). Ex. C, DN 1-3 at 1. The March Letter contained the following language:

> Should you so desire, you will be afforded a hearing, before [Potter], the Executive Authority of the City. Should you desire such a hearing, you will need to make a written request for such a hearing and deliver same to this office via certified mail. . . . You will be allowed be allowed to present witnesses and other documentary evidence. Finally, you will be allowed to *confront those individuals who have made complaints against you at the hearing*.

Ex. C, DN 1-3 at 1 (emphasis added). Much like the November Letter, the March Letter did not identify specific individuals who had complained about Perry's performance. It also failed to explain the reason for Perry's termination.

Perry now brings this action against the City of Oak Grove ("City"). He alleges that under KRS § 15.520, otherwise known as the "policemen's bill of rights," the City should have afforded him certain due process rights the Kentucky legislature set aside for law enforcement

2

officials.  He continues, asserting the City's decision to discard its duties under KRS § 15.520 violated his constitutional due process rights under the Fourteenth Amendment.  The City now moves to dismiss these allegations, arguing Perry has not properly alleged an action under this statute and there is no basis to believe his suspension or termination was predicated on a civilian complaint.

## STANDARD

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff."  *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999) (citing *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995)).

To survive a Rule 12(b)(6) motion to dismiss, the complaint must include "only enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).  The "[f]actual allegations in the complaint must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true."  *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted).   A plaintiff must allege sufficient factual allegations to give the defendant fair notice concerning the nature of the claim and the grounds upon which it rests.  *Id.*

Furthermore, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.*  A court is not bound to accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Iqbal*, 129 S. Ct. at 1949.

**DISCUSSION**

**I. Due Process Claim**

The Fourteenth Amendment protects citizens from state deprivation of life, liberty, or property without due process of law.  U.S. Const. amend XIV.  To establish a procedural due process claim, a plaintiff must show he had a property interest of which he was deprived without due process.  *Hudson v. Hudson*, 475 F.3d 741, 745 (6th Cir. 2007).  Protected property interests do not emanate from the Constitution, but rather are "created and defined by existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).

Kentucky law controls the nature of the employment relationship between Perry and the City.  *See Bishop v. Wood*, 426 U.S. 341, 344 (1976).  Individuals typically do not have a protected interest in an employment position unless they are able to "point to some statutory or contractual right conferred by the state which supports a legitimate claim to continued employment."  *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 141 (6th Cir. 1997).  In Kentucky, in the absence of an agreement or statute to the contrary, employment for an indefinite period of time is terminable at will by either party.  *Shah v. Am. Synthetic Rubber Corp.*, 655 S.W.2d 489, 491 (Ky. 1983); *Prod. Oil Co. v. Johnson*, 313 S.W.2d 411, 413 (Ky.1958).  "An at-will employee is subject to dismissal at any time and without cause; consequently, an at-will employee cannot effectively claim a protectable property interest in his or her job." *Bailey*, 106 F.3d at 141.

Non-elected city officers "may be removed by the executive authority at will unless otherwise provided by statute or ordinance."  KRS § 83A.080(3).  The chief of police is

considered a non-elected city officer. *Id*. § 83A.080(2).  The only statute that alters the general at-will status of law enforcement officers is KRS § 15.520.  If this section of Kentucky's code is inapplicable, then Perry is an at-will employee and he has no protectable property interest under the Fourteenth Amendment; thus, his due process claim will necessarily fail.  *See Howard v. City of Independence*, 199 S.W.3d 741, 745 (Ky. Ct. App. 2005) ("[B]ut for the requirements of [KRS § 15.520], the employment of police officers is terminable at will by the appointing authority for any cause or for no cause.").

With this background, the Court continues on to KRS § 15.520's protections and whether they were necessary in these circumstances.

### II. KRS § 15.520

KRS § 15.520 was enacted by Kentucky's legislature to "'establish a minimum system of professional conduct of the police officers of local units of government of this Commonwealth' by creating standards of conduct 'to deal fairly and set administrative due process rights for police officers . . . and at the same time providing a means of redress by the citizens of the Commonwealth for wrongs allegedly done to them by police officers[.]'" *McCloud v. Whitt*, 639 S.W.2d 375, 377 (Ky. Ct. App. 1982) (quoting KRS § 15.520).  In *Laux v. City of Oak Grove*, No. 5:03-CV-00141-R, 2004 U.S. Dist. LEXIS 27768 (W.D. Ky. Dec. 1, 2004), the Court described the due process rights afforded officers under the statute:

> When [a city] receives a complaint about one of its officers, the City must serve the charges on the police officer in writing.  Prior to or within twenty-four (24) hours after suspending the officer pending investigation or disposition of a complaint, the officer shall be advised in writing of the reasons for the suspension.  Apparently, an officer can be suspended pending investigation or disposition of complaint.  This statute, however, does not contemplate the officer being terminated until after investigation and a hearing on the complaint.

5

> After receiving the charges, the officer shall be given 72-hours notice of the hearing conducted by a body designated under [KRS § 15.520]. If the hearing is not conducted within sixty (60) days of any charge being filed, the charge then shall be dismissed with prejudice and not be considered by any hearing authority and the officer shall be reinstated with full back pay and benefits.

*Id.* at *5 (citations and quotation marks omitted).

Perry's response includes two broad arguments about both the requirements of KRS § 15.520 and the circumstances of his discipline. First, he takes issue with a number of state-law cases that have found the statute's due process protections are only implicated if the disciplinary actions against the police officer arise out of a civilian complaint. Perry says decisions like *Ratliff v. Campbell Cnty.*, No. 09-000310, 2010 WL 1815391, at *1 (Ky. App. Ct. May 7, 2010) and *Marco v. Univ. of Ky.*, No. 05-001755, 2006 WL 2520182, at *1 (Ky. Ct. App. Sept. 1, 2006), have misconstrued the intent of KRS § 15.520, and its provisions should extend to cover discipline prompted by internal investigations by elements of the local government. He also contends that a discrepancy in the use of "citizen" and "individual" in the statute indicates Kentucky's General Assembly did not intend to limit its application to civilian complaints alone.

Perry's statutory analysis ignores the obvious cues from KRS § 15.520's language. Beside being entitled "complaints against police officers," the statute's preamble compares the need of officers to have certain due process protections with the ability of Kentucky's citizens to seek redress for wrongs committed by policemen. KRS § 15.520(1). Such diction shows a singular focus by the legislature: balancing the rights of officers with public grievances leveled against them and the public's right to complain about improper treatment at the hands of law enforcement. A court cannot manufacture an ambiguity where the legislature's intent is clear

from the statute's language.  *See In re Arnett*, 731 F.2d 358, 360 (6th Cir. 1984) ("The primary function of the courts in construing legislation is to effectuate the legislative intent." (citing *Philbrook v. Glodgett*, 421 U.S. 707, 713 (1975))).

Moreover, this Court may not simply discard the trends within Kentucky's courts when they interpret the application of state statutes.  *United States v. Miami Univ.*, 294 F.3d 797, 811 (6th Cir. 2002) ("[F]ederal courts must defer to a state court's interpretation of its own law . . . .").  In *Ratliff v. Campbell Cnty.*, an officer was terminated following an internal investigation by the department into his alleged misconduct.  2010 WL 1815391, at *1.  The officer challenged his termination in court and argued, in part, that he had been denied KRS § 15.520's review procedure.  The Kentucky Court of Appeals rejected this contention, noting that the "statutory language applies to police officers who are subject to citizen complaints as opposed to an internal investigation."  *Id*. at *5.  Because his termination was based on "an internal departmental investigation rather than an investigation initiated as a result of a citizen complaint," the officer was not covered by the statute.  *Id*.  An identical decision was reached in *Marco v. Univ. of Ky.*, where an officer was investigated internally following injuries that two prisoners sustained while in her custody.  2006 WL 2520182, at *1.  The court found the statute inapplicable since the prisoners did not file a grievance and the investigation arose from an internal report.  *Id*. at *2.  Other decisions buttress *Marco*'s and *Ratliff*'s holdings that the statute requires remedial action against the police officer originating from a civilian complaint.  *E.g.*, *Shelton v. Brown*, 71 F. Supp. 2d 708, 711-12 (W.D. Ky. 1998) (where there was no evidence to suggest officer's removal was predicated on "complaint of professional misconduct" or on "charge involving violation of any government rule or regulation", section 15.520 was

inapplicable); *City of Munfordville v. Sheldon*, 977 S.W.2d 497, 499 (Ky. 1998) (statutory provision forbids mayor from "receiving a citizen's complaint against a police officer, then firing the officer based on that complaint, without ever affording the officer a right to publicly defend against the complaint" (footnote omitted)). These prior decisions speak uniformly on the issue at hand: KRS § 15.520 is triggered by civilian complaints and inapplicable where the investigation of the officer has other origins. Accordingly, the Court cannot adopt Perry's statutory analysis.

Second, Perry insists he has offered a sufficient factual basis to overcome a Rule 12(b)(6) motion to dismiss. He underlines the following language in the March and November Letters: "Finally, you will be allowed to confront those individuals who have made complaints against you at the hearing." Ex. A, DN 1-1 at 1; Ex. C, DN 1-3 at 1. Perry alleges these sentences, found in each letter, indicate his suspension and termination were based on complaints that he did not receive or review. He asserts the City abandoned the protections under the statute, which in turn provides him a basis for recovery.

The City responds that these letters do not show Perry's discipline was triggered by a citizen's complaint. It rebuts Perry's interpretation, explaining the letters sent by Potter were not up to date with the law surrounding KRS § 15.520. They therefore included, by mistake, the language describing Perry's disciplinary hearing rights, when in fact the suspension and termination were not based on civilian complaints but were instead discretionary decisions by Potter. The City argues these passages were not meant to notify Perry of substantive complaints filed against him, but rather rehash the requirements of KRS § 15.520 even though the statute was inapplicable under these circumstances.

The salient question before the Court is whether the passages quoted in the November

and March Letters are sufficient to create the inference of a civilian complaint.  The City's arguments against such an inference hold some water.  The overarching purpose of each correspondence is unambiguous, with the November Letter confronting Perry's criminal investigation and the March Letter expressly terminating him.  Ex. A, DN 1-1 at 1; Ex. C, DN 1-3 at 1.  Neither letter uses the word "complaint" outside the targeted sentence, and even then it only appears after a form-like description of KRS § 15.520's procedural nuances.  Furthermore, both letters use the same generic language that explicitly tracks the statute's procedure; this repetition subtracts from the inference that the letters were meant to inform Perry that unnamed individuals submitted complaints against him.  Instead, the identical language lends itself to the interpretation that the contested sentence is merely legal verbiage describing the statute's procedural protections.  The record supports the City's contentions that the inclusion of the highlighted language was an oversight.

      Still, the inferences for which Perry advocates, that his discipline was the result of civilian complaints, are not unreasonable.  The Court cannot test at this stage in the litigation the City's claims that the "complaint" language was included in the letters by mistake.  Rather, the Court must examine Perry's complaint and attached correspondences drawing all reasonable inferences in his favor.  In doing so, the following is clear: (1) the discipline of Perry described in the November and March Letters were sufficient to implicate KRS § 15.520's protections had it been triggered by a civilian complaint; (2) twice Potter included language within the letters that referenced the protections of KRS § 15.520 and included a sentence that permitted Perry to "confront those individuals who have made complaints against you."  If the process requirements of KRS § 15.520 were unnecessary as the City explains, then its citation in both letters can be

construed as evidence that Potter knew of the need for the statute's process but chose to forgo these protections regardless.  The argument and inference that civilian complaints existed against Perry are not unreasonable; thus, the Court believes the letters' implications and the factual allegations in the complaint are sufficient to overcome the burden of Rule 12(b)(6).  *See Brown v. Medtronic, Inc.*, 628 F.3d 451, 461 (8th Cir. 2010) (whereas unreasonable inferences cannot support a plaintiff during a motion to dismiss, reasonable inference must be drawn in his favor); *HMS Property Mgmt. Gp., Inc. v. Miller*, 69 F.3d 537, at *3 (6th Cir. 1995) (table) (same).

## CONCLUSION

The precedent surrounding KRS § 15.520 and the facts of this matter indicate the following: although Perry's complaint may contain a sufficient basis for relief under the statute and the Fourteenth Amendment, any failure to show the presence of a civilian complaint is fatal to his claim.  Rather than opening this matter to full-blown discovery, the Court will permit a 60-day period of limited discovery where Perry may explore whether a civilian complaint was lodged against him during the relevant time period.  Following this discovery period, the Court will hold a telephonic conference where it will either set forth a briefing schedule for summary judgment (because there is no evidence of a civilian complaint) or lay out a more thorough pretrial schedule (if Perry's search has proved more fruitful).  Such a procedure will ensure Perry has the ability to pursue his claim to a legitimate conclusion without exposing the parties the undue expense of fully litigating this matter.

For the foregoing reasons, it is HEREBY ORDERED:

(1)     Defendant's motion to dismiss (DN 4) is DENIED.

(2)     The parties shall be granted 60 days to conduct limited discovery on whether a

    civilian complaint was filed against Perry in the time preceding the November

    and March Letters.

(3)  A **telephonic conference is set for February 10, 2012 at 9:30 a.m. CST**.  The

    Court shall initiate the call.